Robert Tauler (SBN 241964)
Tauler Smith LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (310) 590-3927
rtauler@taulersmith.com

Attorneys for Plaintiff
NUTRITION DISTRIBUTION LLC

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>GEO PEPTIDES, LLC, a Florida Limited Liability Company, CHRISTOPHER GRUSKIN, an individual dba PROGEN PETIDES, CNR INDUSTRIES, LLC, a Florida Limited Liability Company; GP RESEARCH, LLC, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.  **'16CV1962 MMA RBB**<br><br>**COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B)**<br><br>**DEMAND FOR A JURY TRIAL** |

COMPLAINT

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendants Geo Peptides, LLC ("Geo"), Christopher Gruskin ("Gruskin"), CNR Industries ("CNR") and GP Research, Inc. ("GP")(collectively, the "Defendants"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of Defendants' false and misleading advertising in connection with their various purported "research peptides" and "research chemicals," including but not limited to, ALT-711, Anastrozole, Avanafil, Clomiphene, Dapoxetine, Dutasteride, Exemestane, Finasteride, GW-501516, Ketotifen, Letrozole, LGD-4033, MK-2866, MK-677, Pramipexole, Raloxifene, S4, T3, T4, Tamoxifen, Toremifene, CJC-1295, AICAR, BPC-157, GHRP-2, GNRH, Hexarelin, Ipamorelin, Melanotan, MGF, PEG-MGF, Phospho DSIP, PT-141, and Sermorelin (collectively, the "Research Peptides").

2. Peptides, like Defendants' Research Peptides, are chemical compounds containing two or more amino acids linked by the carboxyl group of one amino acid and the amino group of another. As a matter of law, peptides cannot be dispensed for human use without a prescription from a licensed medical practitioner due to their toxicity and potential for harmful effect.

3. Despite the foregoing, there is an illegitimate market for peptides among bodybuilders, competitive athletes, and others seeking to enhance their physiques and physical performance, since users believe that these substances will enhance muscle development, among other potential physical and health benefits.

4. Defendants are part of a growing epidemic of unlawful Internet "pharmacies" that advertise and sell various peptides and other illicit and misbranded drugs to consumers, without informing them of the known health and safety risks and adverse side effects of these products.

5. Indeed, Defendants falsely represent to consumers that their "Research Chemicals" are "for research/laboratory use only" and "NOT for human use and can be harmful if ingested," among other representations. Defendants, however, clearly market and advertise their products for human use and consumption. For example, Defendants have posted advertisements offering discounts on their "Research Chemicals" on various bodybuilding forums. Defendants' advertisements feature images of bodybuilders and fitness models striking poses clearly intended to demonstrate the physical benefits of their "Research Peptides."

6. Moreover, a simple Internet search for Defendants' products demonstrates that consumers are actually purchasing the "Research Peptides" for their personal use and consumption. As demonstrated below, various consumers of Defendants' products have posted reviews concerning their personal use of these products.

7. Thus, Defendants have falsely marketed, advertised, and sold their products as "Research Peptides," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

8. This action seeks to enjoin Defendants from the marketing and sale of their various "Research Peptides," as Defendants are illegally and falsely marketing such products in violation of the Lanham Act.

9. Defendants' false, misleading, illegal and deceptive practices have unjustly enriched Defendants at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

11. This Court has personal jurisdiction over Defendants because they have, directly or through their intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised their nutritional supplement products in the United States, the State of Arizona, and this district, including but not limited to, the Research Peptides. Defendants have purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *See Rowpar Pharm., Inc. v. Lornamead, Inc.*, 2013 WL 5530825 (D. Ariz. Oct. 7, 2013) (finding venue in Arizona proper). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## PARTIES

13. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Place, Phoenix, Arizona, 85022.

14. Defendant Geo Peptides, LLC ("Geo") is a Florida limited liability company that lists 2655 Ulmerton Road, 119, Clearwater, Florida, 33762 as its principal business address.

15. Defendant GP Research, LLC, dba Progen Peptides is a business in Florida that lists 2655 Ulmerton Road, 119, Clearwater, Florida, 33762 as its business address.

16. Defendant Christopher Gruskin is an individual who lists 4905 34th St. N. #255 St. Petersberg, FL 33711 as his address. Upon information and belief, defendant Gruskin owns, operates, and manages both Geo and Progen.

17. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of

these fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## FACTUAL ALLEGATIONS

18. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States. A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years. The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for unfair competition prohibited by the Lanham Act and other illegal activity.

### Plaintiff Nutrition Distribution & "Mass FX Black"

19. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

20. Plaintiff has several categories of bodybuilding products, including pre-workouts, muscle-gainers, fat burners, and male performance enhancement.

21. Around 2011, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

22. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Mass FX Black" in April 2013.

23. In addition to "Mass FX Black," Plaintiff has introduced numerous natural nutritional supplements that directly compete with Defendants' "Research Peptides," including but not limited to, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

### Defendants And Their Purported "Research Peptides"

24. Defendants Geo and Progen are competing supplement companies in Florida. Defendant Gruskin owns, operates, and manages both Geo and Progen.

25. Defendants are engaged in false and misleading advertising with respect to their various purported "Research Peptides." As evidenced by Defendants' representations on their respective websites and their product labeling, these "Research Peptides" are unlawfully marketed and misbranded as "for research/laboratory use only" and "NOT for human use and can be harmful if ingested," among other representations.

26. Contrary to these "disclaimers," Defendants' advertisements claim that their "Research Peptides" will provide numerous purported benefits to consumers seeking to enhance their physiques and physical performance, including but not limited to, increasing the production of human growth hormone, promoting muscle gain and strength, promoting weight loss, reversing aging, increasing lean body mass, and reducing body fat.

27. Moreover, Defendants clearly market and advertise their "Research Peptides" to consumers for personal use and consumption (and not "for research/laboratory use only"). In this regard, Defendants specifically target consumers who are seeking to alter the structure and function of their bodies, such as bodybuilders, competitive athletes, and fitness enthusiasts.

28. For example, Defendants have posted advertisements on various bodybuilding forums, including "www.eroids.com" and "www.thinksteroids.com," which contain discount codes for users accompanied by images of bodybuilders and/or fitness models striking poses clearly intended to demonstrate the physical benefits of Defendants' products.

29. Progen has also posted advertisements on its Twitter account containing discount codes associated with professional athletes such as "NFL," "Kickoff" and "MarchMadness."

30. Furthermore, Defendants frequently solicit users of bodybuilding forums to post reviews of their "Research Peptides." These reviews demonstrate that consumers are actually using the "Research Peptides" for their personal use and consumption (and not "for research/laboratory use only").

31. By way of example only, one consumer posted the following review of Geo's products on the bodybuilding forum "www.eroids.com": "Amazing quality, my endurance went though the roof. This stuff makes my cardio intense and keeps me pumped throughout the workout. I feel like I can run for miles and not get tired. I lost a few pounds of fat while maintaining muscle mass. This stuff is awesome!"

32. Another user posted the following review on the same forum, which further demonstrates that consumers are actually using the Research Peptides for their personal use and consumption:

> "I had indications of patellar tendonitis and could no longer train legs with heavy weights in fact not even light weights. Body weight squats were somehow tolerable to some extent. Started blend and BPC157 regularly with more protein, fibre rich diet, omegas and all kinds of supplements. With in couple of weeks it noticed considerable changes. Especially fast recovery from training. I was able to squat again with light weights in 3 weeks and gradually increased weights. Wounds were healing much faster. It had strong effects on endurance as well. The GHRP6 in the blend had me hungry like a beast. Deep REM sleep patterns. Improved skin and dense nail growth."

33. Thus, Defendants have falsely marketed, advertised, and sold their products as "Research Peptides," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

34. Defendants' "disclaimers" that their products are "for research/laboratory use only" and "NOT for human use and can be harmful if ingested" are patently false and misleading. It is clear from the type of marketing employed by Defendants, the chemicals sold on Defendants' websites, and the lack of specification as to the type of "research" consumers of these products would be conducting, that, in reality, the

aforementioned false and misleading statements are a pretense to elude the authorities and to avoid scrutiny.

35.  Defendants' false and misleading advertising is harmful to the marketplace for dietary and natural nutritional supplements, including Plaintiff's products, and potentially to individual consumers.  Defendants have created an illegitimate marketplace of bodybuilders who will gain muscle "at all costs," but who are not informed of the dangers of Defendants' products.  Indeed, users of Defendants' "Research Peptides" have little incentive to use Plaintiff's natural nutritional supplements until they are hurt or the "Research Peptides" are taken off the market.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

36.  Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

37.  Defendants have purposely made false and misleading descriptions of fact concerning the nature, characteristics and qualities of the products they promote and sell on their websites, including their various "Research Peptides."  As evidenced by Defendants' representations on their websites and product labeling, these "Research Peptides" are unlawfully marketed and misbranded as "for research/laboratory use only" and "NOT for human use and can be harmful if ingested," among other representations.

38.  Contrary to these "disclaimers," Defendants' advertisements claim that their "Research Peptides" will provide numerous purported benefits to consumers seeking to enhance their physiques and physical performance, including but not limited to, increasing the production of human growth hormone, promoting muscle gain and strength, promoting weight loss, reversing aging, increasing lean body mass, and reducing body fat.

39.  Moreover, Defendants clearly market and advertise their "Research Peptides" to consumers for personal use and consumption (and not "for

research/laboratory use only"). Indeed, Defendants specifically target consumers who are seeking to alter the structure and function of their bodies, such as bodybuilders, competitive athletes, and fitness enthusiasts.

40. For example, Defendants have posted advertisements on various bodybuilding forums, including "www.eroids.com" and "www.thinksteroids.com," which contain discount codes for users accompanied by images of bodybuilders and/or fitness models striking poses clearly intended to demonstrate the physical benefits of Defendants' products.

41. Progen has also posted advertisements on its Twitter account containing discount codes associated with professional athletes such as "NFL," "Kickoff" and "MarchMadness."

42. Furthermore, Defendants frequently solicit users of bodybuilding forums to post reviews of their "Research Peptides." These reviews demonstrate that consumers are actually using the "Research Peptides" for their personal use and consumption (and not "for research/laboratory use only").

43. For example, one consumer posted the following review of Geo's products on the bodybuilding forum "www.eroids.com": "Amazing quality, my endurance went though the roof. This stuff makes my cardio intense and keeps me pumped throughout the workout. I feel like I can run for miles and not get tired. I lost a few pounds of fat while maintaining muscle mass. This stuff is awesome!"

44. Another user posted the following review on the same forum, which further demonstrates that consumers are actually using the Research Peptides for their personal use and consumption:

> "I had indications of patellar tendonitis and could no longer train legs with heavy weights in fact not even light weights. Body weight squats were somehow tolerable to some extent. Started blend and BPC157 regularly with more protein, fibre rich diet, omegas and all kinds of supplements. With in couple

8
**COMPLAINT**

of weeks it noticed considerable changes. Especially fast recovery from training. I was able to squat again with light weights in 3 weeks and gradually increased weights. Wounds were healing much faster. It had strong effects on endurance as well. The GHRP6 in the blend had me hungry like a beast. Deep REM sleep patterns. Improved skin and dense nail growth."

45. Thus, Defendants have falsely marketed, advertised, and sold their products as "Research Peptides," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

46. Defendants' "disclaimers" that their products are "for research/laboratory use only" and "NOT for human use and can be harmful if ingested" are patently false and misleading. It is clear from the type of marketing employed by Defendants, the chemicals sold on Defendants' websites, and the lack of specification as to the type of "research" consumers of these products would be conducting, that, in reality, the aforementioned false and misleading statements are a pretense to elude the authorities and to avoid scrutiny.

47. Defendants' use of falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in Arizona, into believing that they are purchasing a product with different characteristics.

48. The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is unaware of the serious health and safety risks of using these purported "Research Peptides," and/or steroids or illegal substances.

49. Defendants have introduced their false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment of their products into interstate commerce containing false and misleading advertising.

9
**COMPLAINT**

50. Defendants' "Research Products" directly compete with Plaintiff's products, including but not limited to, its bodybuilding supplement "Mass FX," as well as its various other natural nutritional supplements, "Advanced PCT," "Ultra Reps," "Stacked BCAA," "SuperSize," "Gym Juice," and "German Creatine."

51. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants and the loss of goodwill in Plaintiff's products. Indeed, Defendants' conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

52. Defendants' actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of their products in violation of Section 43(a)(1)(B) of the Lanham Act.

**PRAYER**

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendants Geo Peptides, LLC, Progen Peptides, and Christopher Gruskin as follows:

1. For preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, and selling its various purported "Research Peptides," and enjoining Defendants from selling any products on the websites "www.geopeptides.com" and "www.progenpeptide.com";

2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;

3. For an award of any and all of Defendants' profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;

4. For restitution of Defendants' ill-gotten gains;

5. For treble damages in accordance with 15 U.S.C. § 1117;

6. For punitive damages;

7. For costs and attorneys' fees; and

8.      Any other relief the Court may deem appropriate.

DATED:  August 4, 2016                    TAULER SMITH LLP



                                          By: ___/s/ Robert Tauler _____
                                              Robert Tauler
                                              NUTRITION DISTRIBUTION LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: August 4, 2016                              TAULER SMITH LLP


                                                   By: ___/s/ *Robert Tauler* _____
                                                       Robert Tauler
                                                       NUTRITION DISTRIBUTION LLC